**ERIE INSURANCE COMPANY,**
Petitioner,

v.

**INSURANCE DEPARTMENT,**
Respondent.

**ERIE INSURANCE EXCHANGE,**
Petitioner,

v.

**PENNSYLVANIA INSURANCE DEPARTMENT,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1997.

Decided Dec. 24, 1997.

Thomas E. Brenner, Harrisburg, for petitioners.

Michael F. Consedine, Harrisburg, for respondent.

Before DOYLE and FRIEDMAN, JJ., and LORD, Senior Judge.

DOYLE, Judge.

Before us in our appellate jurisdiction are the consolidated appeals of the Erie Insurance Company and the Erie Insurance Exchange (collectively, Erie) from two orders of the Pennsylvania Insurance Commissioner (Commissioner) affirming two determinations rendered by the Pennsylvania Insurance Department (Department), which held that the cancellation of the insurance policies of Kimberly Ann Mack and John Angelini violated the Act of June 5, 1968, P.L. 140, No. 78, *as*

*amended,* 40 P.S. §§ 1008.1–.11 (Act 78 or Act).

Kimberly Ann Mack was initially issued an automobile insurance policy by the Erie Insurance Company in 1985 under her maiden name Kimberly Ann Garber. She remained an insured of that company thereafter and renewed her policy for the relevant policy period of August 7, 1993, through August 7, 1994. In February of 1994, Ms. Garber married John Joseph Mack, Jr., after which she contacted Erie to request that her name be changed accordingly on her automobile insurance policy. On May 13, 1994, Erie mailed a Notice of Cancellation to Kimberly Ann Mack, which stated the following:

> John Joseph Mack, Jr.'s Pennsylvania Motor Vehicle Record, secured by Equifax Services ... reveals the following: 3/12/92—suspension for 140 days, and 10/2/93—suspension for one year. John Joseph Mack, Jr.'s Pennsylvania operator's license is suspended. As John Joseph Mack, Jr.'s operator's license is currently suspended, we are cancelling your policy.

(Mack Notice of Cancellation; Reproduced Record (R.R.) at 23a.) The Notice of Cancellation was addressed only to Mrs. Mack and named only "Kimberly Ann Mack" as the named insured. Mrs. Mack was the only person named on the declarations page of the policy, and John Joseph Mack was at no time listed on the policy as a named insured.

After receiving the Notice of Cancellation, Mrs. Mack filed a timely request for review of the policy cancellation with the Department. The Department issued an Investigative Report/Order on June 17, 1994, in which it found that Erie had violated Act 78 in cancelling her policy. Erie subsequently appealed the order to the Commissioner. On September 14, 1994, a hearing was held before a duly-appointed hearing officer, after which former Commissioner Linda S. Kaiser issued an Adjudication and Order, dated September 24, 1996, affirming the Department's prior determination. The Commissioner's order also directed Erie to cease and desist from cancelling Mrs. Mack's automobile insurance policy. Erie subsequently appealed from the Commissioner's September 24, 1996 order to this Court.

The other consolidated appeal in this case involves substantially similar facts. On February 28, 1995, Erie mailed a Notice of Cancellation to John N. Angelini, which stated in relevant part:

> According to Mrs. Angelini's Pennsylvania Motor Vehicle Record, secured by Equifax Services ... her license was suspended for one month effective October 26, 1994. We are cancelling your policy because of her license suspension during the policy period.

(Angelini Notice of Cancellation; R.R. at 88a.) The Notice of Cancellation was addressed to John Angelini and lists only Mr. Angelini as the "named insured." Mrs. Angelini at no time appeared on the policy as a named insured.

Upon receiving the Notice of Cancellation, Mr. Angelini filed a timely request for review of the policy cancellation by the Department. The Department issued an Investigative Report/Order on March 10, 1995, in which it found that Erie had violated Act 78 by cancelling Mr. Angelini's policy. Erie filed a timely appeal of the Investigative Report/Order with the Commissioner, and, on June 22, 1995, a hearing was held before a duly-appointed hearing officer. By order dated January 2, 1997, Commissioner Kaiser affirmed the previous determination of the Department and further directed that Erie cease and desist from cancelling Mr. Angelini's automobile insurance policy. Erie subsequently appealed from that order.

■ This Court's standard of review on appeal from an order of the Insurance Commissioner is limited to a determination of whether constitutional rights have been violated, an error of law was committed, or whether the findings of fact were supported by substantial evidence. *Nationwide Mutual Insurance Company v. Foster,* 134 Pa. Cmwlth. 585, 580 A.2d 436, 438 (1990).

In this case, the governing statutory provisions of Act 78 are at odds with the contractual definition of "named insured" in both automobile insurance policies involved in this appeal. This case, therefore, presents the issue of whether or not the definition of the term "named insured" contained in the insur-

ance policies at issue controls over the plain meaning of that term as used in Act 78.

Section 3 of Act 78 provides in pertinent part as follows:

(e) No insurer shall cancel or refuse to renew a policy of automobile insurance for two or fewer moving violations in any jurisdiction or jurisdictions during a twenty-four month period when the operator's record indicates that **the named insured** presently bears five points or fewer. However, this provision shall not apply under the following conditions:

. . . .

2) The driver's license or motor vehicle registration of **the named insured** has been suspended or revoked. . . .

(f) **The applicability of subsection (e) to one, other than the named insured, who either is a resident in the same household or who customarily operates an automobile insured under the policy shall be proper reason for the insurer thereafter excluding such individual from coverage under the policy, but not for cancelling the policy.**

40 P.S. § 1008.3(e)–(f) (emphasis added). In addition, Section 4 of the Act provides as follows:

No insurer shall cancel a policy except for one or more of the following specified reasons:

. . . .

(2) The driver's license or motor vehicle registration of the named insured has been under suspension or revocation during the policy period; the applicability of this reason to one who either is a resident in the same household or who customarily operates an automobile insured under the policy shall be proper reason for the insurer thereafter **excluding such individual from coverage under the policy, but not for cancelling the policy**. . . .

40 P.S. § 1008.4 (emphasis added). Thus, it is clear that the Act distinguishes between individuals who are actually "named insureds" on the policy and those who merely reside with the named insured or who customarily operate the insured vehicle.

However, the insurance policies involved in this consolidated appeal contained language defining the term "named insured" as follows:

"you," "your" or "**Named Insured**" means the Subscriber and others named in Item 1 on the Declarations. **Except in the GENERAL POLICY CONDITIONS Section, these words include the spouse of the Subscriber if a resident of the same household.**

(Insurance Policies; R.R. at 29a & 94a.) (Emphasis added.) Erie contends that the operative effect of this contractual provision is to allow the insurance company to cancel the policy of an insured based upon the driving record of a spouse residing in the same household who is not named in the declarations section of the policy. Succinctly put, Erie's argument is that, for the purposes of cancellation, the contractual provisions of the insurance policy take precedence over the statutory provisions of Act 78.

■ With respect to this issue, Commissioner Kaiser concluded as follows:

The Commissioner finds that the General Assembly, when enacting Act 78, intended for the term 'named insured' to refer to the one or more 'insureds' who are 'named' on the Declarations. The basis for this finding is that this definition fits in the common usage of the phrase. . . . The General Assembly did not intend . . . the term 'named insured' to include those other persons who are listed as additional insureds in an endorsement or merely listed as additional drivers of the insured vehicle. The General Assembly intended to adopt a clear-cut and simple definition of named insured, consistent with the policyholder protection focus of Act 78.

. . . Many insurance companies do not include such a definition in their policies. Rather, the general Assembly intended to adopt a rule that is certain and can be applied uniformly to all automobile insurance companies in a consistent manner. For this reason, the General Assembly did not leave the definition of 'named insured' in the hands of the contract drafted by the insurance company, but adopted a term which references those insureds who are

named on the Declarations page of the policy.

(Commissioner's Opinion in *Mack,* 9/24/97, at 12–13.) (Citations and footnote omitted.) After a review of the relevant statutory provisions and governing case law, we must agree with the Commissioner's conclusion.

First, we believe that the plain meaning of the statute demonstrates that the use of the term "named insured" clearly refers only to those individuals named in the declarations section of the insurance policy. Pursuant to the express terms of Section 4 of the Act, if an individual residing with the named insured has his or her driver's license suspended or revoked, the insurance company may not cancel the policy altogether but may only exclude that individual from coverage under the named insured's policy thereafter. Consequently, it is clear that the Act distinguishes between two classifications of individuals: the "named insured" on the one hand, and, on the other, those who merely reside with a named insured or customarily operate the insured vehicle. Of course, the inescapable conclusion from this is that one who merely resides with the "named insured" is not a named insured himself or herself. Thus, contrary to the contractual definition of "named insured" contained in the insurance policies at issue in this case, a spouse is not a "named insured" **under Act 78** merely by virtue of the fact that he or she resides with the person who is specifically designated as a named insured under the declarations section of the policy.

This conclusion is further supported by the application of Section 1903 of the Statutory Construction Act of 1972 which provides that technical words and phrases having a particular meaning must be construed in accordance with that meaning:

(a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; *but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in*

*this part, shall be construed according to such peculiar and appropriate meaning or definition.*

1 Pa.C.S. § 1903(a) (emphasis added). An extensive body of secondary authority, including insurance law treatises, indicates that the phrase "named insured" is used as a technical term in the insurance industry referring only to individuals designated as "named insureds" on the face of or in the declarations section of the policy. *See, e.g., Black's Law Dictionary* at 1023 (6th ed. 1990) ("**Named insured.** In insurance, the person **specifically designated** in the policy as the one protected and, commonly, it is the person with whom the contract of insurance has been made." (emphasis added)); Barry D. Smith et al., *Property & Liability Insurance Principles* 216 (2d ed. 1994) ("The declarations page of a policy has a space labeled 'named insured(s).' Only parties whose names appear in that space (or on an attached endorsement listing 'additional named insureds' are, in fact, 'named insureds.' Often, the spouse of a named insured receives the same coverage as a named insured, even if the spouse is not named (and is not, therefore, a *named* insured))." (emphasis in original)); John Alan & Jean Applebaum, *Insurance Law & Practice* 51 (1979) ("Whenever the term 'named insured' is employed, it refers only to the person specifically designated upon the face of the contract."); *see also* 7 Am.Jur. *Automobile Insurance* § 236 (1980); *Words & Phrases,* "Named Insured" (1955 & Supp.1997).

Thus, we conclude that the term "named insured" as used in Act 78 must refer to only those individuals specifically named in the declarations section of the relevant automobile insurance policy.[1]

We further note that this definition of "named insured" also comports with this Court's holding in *Westerfer v. Insurance Commissioner of Pennsylvania,* 161 Pa. Cmwlth. 568, 637 A.2d 746 (1994), *petition for allowance of appeal denied,* 540 Pa. 625, 657

---

1. We also note that Section 5 of the Act provides that "[n]o cancellation ... by an insurer of a policy of automobile insurance shall be effective unless the insurer shall deliver or mail, **to the named insured** at the address shown in the poli-

cy a written notice of the cancellation." 40 P.S. § 1008.5 (emphasis added). However, only the names of Kimberly Ann Mack and John Angelini appeared on the notices of cancellation sent pursuant to this provision of the Act by Erie.

A.2d 495 (1995), in which we reversed the decision of the Commissioner which affirmed State Farm Insurance Company's nonrenewal of an automobile insurance policy. The petitioners in *Westerfer* were husband and wife residing in the same household who appealed from State Farm Insurance Company's nonrenewal of an insurance policy on which only one of the petitioners was a named insured. We ultimately held as follows:

> After review of the record, we find that the Commissioner's affirmance of State Farm's action is an error of law in violation of Section 3(a) of the Act.[2] Moreover, Sections 3(e) and 3(f) of the Act clearly do not sanction State Farm's nonrenewal, because Gustin and not her spouse, Westerfer, was the named insured on the subject policy with no violations against her driving record, and because, at most, Section 3(f) permits State Farm **only to exclude Gustin's spouse from coverage on her policy but not to cancel or refuse to renew it.**
>
> . . . .
>
> We also concur with Gustin's argument that . . . the insurer acted on the erroneous rationale that 'the insured entity is the entire family unit' and that, therefore, her spouse's license suspension is good reason not to renew her automobile policy regardless of her own excellent driving record.
>
> . . . .
>
> In the present matter, State Farm has the option of specifically excluding Gustin's spouse from coverage on her policy, which exclusion should sufficiently protect its interests while, at the same time, reflecting the Act's 'overriding principle' to protect 'policyholders from improper non-renewals or cancellations by insurers.'

*Westerfer,* 637 A.2d at 748–49 (emphasis added) (quoting *State Farm Mutual Automobile Insurance Company v. Department of Insurance,* 134 Pa.Cmwlth. 226, 578 A.2d 999, 1001 (1990), *petition for allowance of appeal denied,* 527 Pa. 595, 588 A.2d 915 (1991)).

■ Despite Erie's assertions to the contrary, the clear import of this Court's holding in *Westerfer* is that an insurance company is not statutorily permitted to cancel or refuse to renew a policy due to the license suspension or revocation of the insured's spouse when that spouse is not named on the policy.[3] Erie nevertheless argues that the contractual language of the policy overrides this restriction against the cancellation of automobile insurance policies. We disagree.

We initially note that no language contained anywhere in the Act conditions the operation of its cancellation restrictions on the absence or existence of opposing contractual language in an insurance policy.

Moreover, given the need for uniformity and the significant public policy considerations which form the basis of the Act, such protection against unjustified cancellations may not be circumvented by the mere addition of conflicting contractual language in the insurance policy. As the Superior Court stated in *Allwein v. Donegal Mutual Insurance Co.,* 448 Pa. Superior Ct. 364, 671 A.2d 744, *petition for allowance of appeal denied,* 546 Pa. 660, 685 A.2d 541 (1996):

> 'As a general rule, stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws.'

*Id.* at 379, 671 A.2d at 752 (quoting George J. Couch, *Couch on Insurance 2d* § 13.7 at 827

---

2. Section 3(a) of the Act provides in relevant part as follows:
   > (a) No insurer shall cancel or refuse to write or renew a policy of automobile insurance for one or more of the following reasons:
   >    . . . .
   >    (8) Marital status.
   
   40 P.S. § 1008.3(a).

3. We note that in *State Farm Mutual Automobile Insurance Co. v. Department of Insurance (Shenberger),* 654 A.2d 303 (Pa.Cmwlth.1995), we held that an insurance company could refuse to *renew*

an insurance policy based upon the license suspension of a nonspouse residing with the named insured. In so holding, we also reaffirmed this Court's holding in *Westerfer* that, pursuant to Section 3 of the Act, an insurance company could not cancel or refuse to renew an insurance policy of a named insured because of his or her spouse's driving record. However, because in this case we are principally concerned with Section 4 of the Act, which pertains to cancellations only, the *Shenberger* case is inapposite in all other respects.

(Rev. ed.1984)); *see also* 7 Am.Jur.2d *Automobile Insurance* § 9 (1997) ("When the terms of an insurance policy conflict with mandatory statutory provisions, the statutory provisions must prevail.").

Thus, the fact that the spouses of the "named insureds" in these appeals happen also to be referred to as a "named insured" under the contractual language of the policy is of no consequence in terms of the protection afforded by the Act, and any discrepancies between the Act and contractual interpretations emanating from the policies' definition of "named insured" must yield to the clear mandate of Act 78.

Accordingly, for the foregoing reasons, we affirm the orders of the Commissioner.

### ORDER

**NOW**, December 24, 1997, the orders of the Pennsylvania Insurance Commissioner in the above-captioned matters are hereby affirmed.